IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

E.I. DU PONT DE NEMOURS AND COMPANY, )
)
            Plaintiff, )
)
      v. )       Civ. Action No. 11-773-SLR-CJB
)
HERAEUS HOLDING GMBH, and HERAEUS )
MATERIALS TECHNOLOGY, LLC, )
)
          Defendants. )

## REPORT AND RECOMMENDATION

In this action, Plaintiff E.I. DuPont de Nemours and Company ("DuPont" or "Plaintiff")

filed a Complaint on September 2, 2011 against Defendants Heraeus Holding GmbH ("Holding")

and Heraeus Materials Technology, LLC ("Materials") (collectively "Defendants"), alleging

infringement of U.S. Patent Number 7,767,254 (the "'254 Patent").  (D.I. 1)  Before the Court are

two pending motions:  (1) Materials' Motion to Dismiss Plaintiff's Complaint for Failure to State

a Claim of Indirect and Willful Infringement, filed pursuant to Federal Rule of Civil Procedure

12(b)(6) (the "Rule 12(b)(6) Motion") (D.I. 8); and (2) Holding's Motion to Dismiss for Lack of

Jurisdiction Over the Person, filed pursuant to Federal Rule of Civil Procedure 12(b)(2) (the

"Rule 12(b)(2) Motion") (D.I. 15).

For the reasons discussed below, I recommend that the Court GRANT-IN-PART and

DENY-IN-PART Materials' Rule 12(b)(6) Motion.  Specifically, I recommend that Materials'

motion as to Plaintiff's inducement and contributory infringement claims be granted without

prejudice, but that as to willful infringement the motion be denied as moot.  I also recommend

that the Court GRANT Holding's Rule 12(b)(2) Motion.

## I.      BACKGROUND

A.      **The Parties**

Plaintiff is a Delaware corporation with its principal place of business in Delaware.  (D.I.

1 at ¶ 3)  Plaintiff is described in the Complaint as a world leader in science innovation in various

markets, and as a leading supplier of front-side photovoltaic pastes.  (*Id.*)  Defendant Holding is a

German company with its principal place of business in Germany.  (*Id.* at ¶ 5)  Defendant

Materials is a Delaware corporation with its principal place of business in West Conshohocken,

Pennsylvania.  (*Id.* at ¶ 4)  Materials, which is involved in the processing of precious and

platinum group metals, is a wholly owned subsidiary of Holding.  (*Id.*)

B.      **Plaintiff's Complaint**

In the Complaint, Plaintiff asserts one count of direct infringement (Count One) and one

count of indirect infringement (Count Two) of the '254 Patent against Defendants.  (D.I. 1 at 3-4)

The '254 Patent, which is entitled "Paste for Solar Cell Electrode and Solar Cell," claims a

method of producing a light-receiving surface electrode of a solar cell using a conductive paste.

(D.I. 1, ex. A at col. 8:50-59)

In the "Jurisdiction and Venue" section of the Complaint, Plaintiff asserts that the Court

has personal jurisdiction over both defendants for the following reasons:

> [Materials] is incorporated in Delaware and maintains substantial,
> continuous, and systematic contacts in Delaware.  Heraeus has thus
> purposefully availed itself of the benefits and protections of Delaware's
> laws such that it should reasonably anticipate being haled into court here.
> [Holding] is subject to personal jurisdiction in Delaware because, (a) on
> information and belief, [Holding] controls and dominates [Materials], and
> therefore the activities of [Materials] in this jurisdiction are attributed to
> [Holding] and (b) defendant [Holding] develops, markets, and distributes
> front-side silver pastes throughout the United States and in this judicial
> district through the actions of its agent [Materials].

(D.I. 1 at ¶ 7)

With respect to its allegations of infringement, Plaintiff alleges that Defendants directly

infringe one or more claims of the '254 Patent due to their manufacture and use of solar cells

made using pastes in the H94XX and H92XX series at Defendants' West Conshohocken,

Pennsylvania research facility.  (D.I. 1 at ¶ 12)  As for indirect infringement, Plaintiff alleges:

> Upon information and belief, [Defendants have] willfully, deliberately, and
> actively induced and/or contributed to and [are] continuing to willfully,
> deliberately and actively induce and/or contribute to the infringement by
> others of the '254 Patent by selling the H94XX pastes and H92XX pastes to
> customers who infringe the '254 Patent by practicing the method disclosed
> therein to produce a light-receiving surface electrode of a solar cell using a
> conductive paste, and/or by importing or offering to sell in the United
> States solar cells made by the claimed process. . . .
>
> Upon further information and belief, [Defendants have] been on notice of
> the '254 Patent at least from the date of filing of this Complaint, and [have]
> specifically intended that others will use the unauthorized products in a
> manner that infringes the '254 Patent.
>
> Upon information and belief, [Defendants] will continue to induce others to
> infringe and/or contribute to the infringement of the '254 Patent unless and
> until enjoined by this Court.

(*Id.* at ¶¶ 16-17)  In its Prayer for Relief, Plaintiff requests, among other things, "[a]n

adjudication that [Defendants have] willfully, deliberately, and actively induced others to infringe

the '254 Patent."  (*Id.* at 4, ¶ b)

### C.   Procedural History

On October 24, 2011, in lieu of answering the Complaint, Materials filed the Rule

12(b)(6) Motion seeking dismissal on the grounds that the allegations in the Complaint fail to

state a claim of indirect and willful infringement.  (D.I. 8)  That motion was fully briefed as of

November 21, 2011. (D.I. 14) On January 12, 2012, Holding filed the Rule 12(b)(2) Motion,

asserting that the Complaint against it should be dismissed due to a lack of personal jurisdiction.

(D.I. 15, 16) The Rule 12(b)(2) Motion was fully briefed as of February 6, 2012. (D.I. 20) On

April 5, 2012, this case was referred to me by Judge Sue L. Robinson to hear and resolve all

proceedings relating to discovery disputes, alternative dispute resolution and dispositive and non-

dispositive motions, up to claim construction. (D.I. 21)

## II. DISCUSSION

### A. Rule 12(b)(6) Motion

#### 1. Standard of Review

The sufficiency of pleadings for non-fraud cases is governed by Federal Rule of Civil

Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is

entitled to relief." Fed. R. Civ. P. 8(a)(2). When presented with a Rule 12(b)(6) motion to

dismiss for failure to state a claim, a court conducts a two-part analysis. *Fowler v. UPMC*

*Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).[1] First, the court separates the factual and legal

elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but

---

[1]    In a patent case, a motion to dismiss for failure to state a claim is reviewed under
the law of the regional circuit. *In re Bill of Lading Transmission and Processing Sys. Patent
Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012). However, although Federal Circuit decisions on
such issues are not considered binding, courts have considered the reasoning in those cases as
strongly persuasive authority. *See, e.g., Joao Control & Monitoring Sys. of California, LLC v.
Sling Media*, No. C-11-6277 EMC, 2012 WL 3249510, at *4 n.1 (N.D. Cal. Aug. 7, 2012); *Conte
v. Jakks Pac., Inc.*, No. 1:12-cv-0006 LJO GSA, 2012 WL 3069971, at *2 n. 1 (E.D. Cal. July 27,
2012). To the extent that Federal Circuit caselaw is cited in this Report & Recommendation with
regard to the Rule 12(b)(6) Motion, it is because the Court has found the reasoning of those cases
persuasive when considering them in light of the law of the regional circuit (here, the Third
Circuit) and the related decisions of this Court.

[disregarding] any legal conclusions." *Id.* at 210–11. Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 129 S.Ct 1937, 1950 (2009)). Thus, although a non-fraud claim need not be pled with particularity or specificity, that claim must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted).

Determining whether a claim is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A plausible claim does more than merely allege entitlement to relief; it must also demonstrate the basis for that "entitlement with its facts." *Fowler*, 578 F.3d at 211 (citations omitted). Thus, a claimant's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted); *accord Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). In other words, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In assessing the plausibility of a claim, the court must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler*, 578 F.3d at 210 (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

5

With regard to an allegation of direct infringement in a patent case, Form 18 of the

Appendix of Forms to the Federal Rules of Civil Procedure sets forth a sample complaint for that

claim. *In re Bill of Lading Transmission and Processing Sys. Patent Litig.*, 681 F.3d 1323, 1334

(Fed. Cir. 2012). The United States Court of Appeals for the Federal Circuit has held that

because an asserted claim of direct infringement that follows the dictates of Form 18 clearly

passes muster under the Federal Rules, such an allegation cannot be successfully attacked in a

motion to dismiss. *Id.* ("Accordingly, to the extent that the parties argue that *Twombly* and its

progeny conflict with the Forms and create different pleading requirements, the Forms control.");

*Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 562 (D. Del. 2012) (same). Form

18 simply requires:

> (1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the
> patent; (3) a statement that defendant has been infringing the patent 'by
> making, selling, and using [the device] embodying the patent;' (4) a
> statement that the plaintiff has given the defendant notice of its
> infringement; and (5) a demand for an injunction and damages.

*Bill of Lading*, 681 F.3d at 1334 (quoting *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357

(Fed. Cir. 2007)); *see also Walker Digital,* 852 F. Supp. 2d at 562.

As to claims of indirect infringement, the level of detail set forth in Form 18 does not

control, because that form only relates to an allegation of direct infringement and the "Forms are

controlling only for causes of action for which there are sample pleadings." *Bill of Lading*, 681

F.3d at 1336. Instead, the "general principles of *Twombly* and *Iqbal* must be applied to indirect

infringement claims." *Id.* at 1337; *see also Pragmatus Telecom, LLC v. Ford Motor Co.*, Civil

Action No. 12-92-RGA, 2012 WL 2700495, at *1 (D. Del. July 5, 2012) (requiring that, as to

6

indirect infringement claims, "facts [be] alleged from which one could infer that the allegation is plausible"); *Investpic, LLC v. FactSet Research Sys., Inc.*, Civ. No. 10-1028-SLR, 2011 WL 4591078, at *1 (D. Del. Sept. 30, 2011) (noting that a plaintiff pleading an indirect infringement claim must state facts in support of that claim, not just legal conclusions).

## 2. Discussion

The Rule 12(b)(6) Motion alleges in various ways that Plaintiff has insufficiently pled claims of indirect infringement (i.e., induced infringement and contributory infringement) and willful infringement. (D.I. 8 at 5-7) The Court will consider these arguments in turn.

### a. Inducement

Under 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." In order to demonstrate inducement of infringement, the patentee must establish, first, that there has been direct infringement and, second, that the alleged indirect infringer had "knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011); *see also Walker Digital*, 852 F. Supp. 2d at 563. The alleged infringer must "knowingly induce[] infringement and posses[] specific intent to encourage another's infringement." *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (quoting *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005)). Accordingly, "[i]nducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *Id.*; *see also Walker Digital*, 552 F. Supp. 2d at 563. In order for an inducement claim to survive a motion to dismiss, then, the complaint must

contain facts "plausibly showing that [the alleged indirect infringer] specifically intended their

customers to infringe [the patent-at-issue] and knew that the customer's acts constituted

infringement." *Bill of Lading*, 681 F.3d at 1339; *see also Mallinckrodt, Inc. v. E-Z-EM Inc.*, 670

F. Supp. 2d 349, 354 (D. Del. 2009) (noting that a complaint stating a claim for inducement must

allege "sufficient facts" to demonstrate the requisite knowledge and intent required under 35

U.S.C. § 271(b)).

    As a preliminary matter, "'[t]here can be no inducement or contributory infringement

without an underlying act of direct infringement.'" *Bill of Lading*, 681 F.3d at 1333 (quoting

*Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004)); *see also*

*Akamai Techs., Inc. v. Limelight Networks, Inc.*, — F.3d —, 2012 WL 3764695, at *4-14 (Fed.

Cir. Aug. 31, 2012) (holding that, as to inducement cases involving method claims, it is not

required that a single party be liable as a direct infringer, as multiple entities may directly

infringe a patent by collectively practicing the steps of the claimed method). Materials does not

assert that the underlying acts of direct infringement alleged in Count Two are insufficient to

meet the requirements of Form 18. In Count Two, Plaintiff alleges that Materials' pastes are

used by its customers who then "infringe the '254 Patent by practicing the method disclosed

therein to produce a light-receiving surface electrode of a solar cell using a conductive paste,

and/or by importing or offering to sell in the United States solar cells made by the claimed

process." (D.I. 1 at ¶ 16) Although these allegations do not identify a specific direct infringer,

they are sufficient to allow an inference that at least one direct infringer exists. *Bill of Lading*,

681 F.3d at 1336 ("[A] plaintiff need not identify a *specific* direct infringer if it pleads facts

sufficient to allow an inference that at least one direct infringer exists.") (emphasis in original).
The remainder of the direct infringement allegations, although not particularly detailed,
otherwise track the specificity requirements set out in Form 18 for such a claim. *See Bill of
Lading*, 681 F.3d at 1335; *Apeldyn Corp. v. Sony Corp.*, 852 F. Supp. 2d 559, 572 (D. Del. 2012)
("The . . . complaint fully complies with Form 18 [in that, *inter alia*,] the allegations of direct
infringement identify the patent at issue, the accused product and the damages sought.").

  Materials argues, however, that Plaintiff's inducement claim is deficient in two respects.
First, it notes that the knowledge required of the alleged inducer includes knowledge of the
patent-at-issue at the time of the alleged infringement—a fact that must be pled in the complaint.
*Global-Tech*, 131 S.Ct. at 2068; *Walker Digital,* 852 F. Supp. 2d at 565. However, Materials
asserts that Plaintiff has failed to plead facts properly alleging such knowledge. In that regard, it
asserts that Plaintiff's allegation that Defendants have "been on notice of the '254 Patent at least
from the date of filing of this Complaint," (D.I. 1 at ¶ 17), is insufficient for an allegation of
indirect infringement, in that Plaintiff must instead plead facts permitting the "Court to infer that
Heraeus had knowledge of the '254 patent *prior to* filing of the Complaint." (D.I. 8 at 6
(emphasis added); *see also* D.I. 14 at 2-4). Plaintiff, for its part, asserts that at this stage, its
indirect infringement claims seek prospective damages only, running from the date of the filing
of its Complaint; in such circumstances, it claims that it need only allege notice of the patent-at-
issue as of the date of the filing. (D.I. 13 at 3-6)

  This Court has recently addressed this issue in a number of cases, including *Walker
Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 565 (D. Del. 2012), and *Apeldyn v. Sony*

*Corp.*, 852 F. Supp. 2d 568, 573 (D. Del. 2012). In *Walker Digital*, for example, plaintiff Walker

Digital, LLC filed an initial complaint on April 11, 2011, alleging patent infringement claims

against various defendants. 852 F. Supp. 2d at 560. A few months later, on July 29, 2011,

plaintiff filed an amended complaint alleging direct and indirect infringement of two patents. *Id.*

This Court held that "there is no legal impediment to having an indirect infringement cause of

action limited to post-litigation conduct"—i.e., conduct that occurred after the filing of the first

complaint in the case. *Id.* at 565. In such cases, it held, the plaintiff is simply "prohibited from

collecting damages related to indirect infringement for any pre-knowledge (e.g., pre-filing)

conduct." *Id.* In light of this, the *Walker Digital* Court explained that "if a complaint sufficiently

identifies, for purposes of Rule 8, the patent at issue and the allegedly infringing conduct, a

defendant's receipt of the complaint and decision to continue its conduct despite the knowledge

gleaned from the complaint" sufficiently pleads a prospective claim of indirect infringement. *Id.*;

*see also Apeldyn*, 852 F. Supp. 2d at 574 (same); *Minkus Elec. Display Sys. Inc. v. Adaptive

Micro Sys. LLC*, Civ. No. 10-666-SLR, 2011 WL 941197, at \*4 (D. Del. Mar. 16, 2011)

(allowing indirect infringement claims to go forward "[g]iven that all defendants will be deemed

to have knowledge of the . . . patent as of the date the [initial] complaint was filed" such that this

would limit "plaintiff's damages to the period dating from" the date of the filing of the initial

complaint).[2] Other decisions of this Court, issued since *Walker Digital* and *Apledyn*, have come

---

[2]     In its briefing, Materials cites to a few cases from this Court, particularly the
decisions in *Xpoint Techs., Inc. v. Microsoft Corp.*, 730 F. Supp. 2d 349 (D. Del. 2010) and *EON
Corp. IP Holdings LLC v. FLO TV Inc.*, 802 F. Supp. 2d 527 (D. Del. 2011), for the proposition
that knowledge of the patent-in-suit at the time of the filing of the initial complaint in the present
action is not sufficient for pleading the requisite knowledge for indirect infringement. (D.I. 8 at

to the same conclusion.[3]

In this case, as to knowledge of the patent-at-issue, Plaintiff does allege that Defendants have "been on notice of the '254 Patent at least from the date of the filing of the Complaint." (D.I. 1 at ¶ 17) And while *Twombly* and *Iqbal* require facts to be pled that allow for the plausible inference that the elements of an inducement claim can be met, when it comes to knowledge of the patent-at-issue, a plaintiff's filing (and a defendant's receipt) of the complaint *are* facts that establish such knowledge—at least as of the date of the filing. For that reason, in light of the holdings of *Walker Digital*, *Appledyn* and the other cases from this District referenced above, and in light of Plaintiff's assertion that its claim is for prospective relief only, I find that this factual allegation is sufficient to demonstrate knowledge of the patent-at-issue.

Materials' second argument is that Plaintiff has failed to plead any facts sufficient to establish that it possessed the specific intent to encourage another's infringement. (D.I. 8 at 6-7;

---

5-7; D.I. 14 at 2-4) Yet in the later-decided *Walker Digital* and *Appledyn* cases, the Court specifically noted its prior holdings in *Xpoint* and *EON Corp.*, but explained that as applied to prospective claims of induced infringement, given the "ease of amendment, the limitation of damages to post-knowledge conduct, and in the interests of judicial economy, . . . the better reasoning is to allow a complaint that satisfies Rule 8 to proceed to discovery rather than dismissing it for lack of pre-filing knowledge." *Walker Digital*, 852 F. Supp. 2d at 566 n.11; *see also Apeldyn*, 856 F. Supp. 2d at 574 n.8 (same). Thus, to the extent that Materials relies on *Xpoint* and *EON Corp.* to support a contrary conclusion, I find its argument unpersuasive.

[3]     *See, e.g., Softview LLC v. Apple Inc.*, Civ. No. 10-389-LPS, 2012 WL 3061027, at *7 (D. Del. July 26, 2012) ("In the Court's view, an accused infringer is on notice of the patent(s)-in-suit once an initial pleading identifies [the patents], and a patentee that successfully proves the remaining legal elements of indirect infringement is entitled to recover for any post-filing indirect infringement of those patents."); *Pragmatus Telecom*, 2012 WL 2700495, at *1 (noting that allegations of indirect infringement could have proceeded forward where defendant was alleged to have notice of the patents-in-suit as of the date of the filing of the original complaint, if facts were sufficiently pled as to other claim elements).

D.I. 14 at 4). Plaintiff does not directly respond to this argument in its answering brief.

In *Bill of Lading*, the Federal Circuit held that a Plaintiff must satisfy the requirements of *Twombly* and *Iqbal* in pleading inducement claims. 681 F.3d at 1336-37. It then reviewed a plaintiff's indirect infringement claims, including an inducement claim, under that standard. *Id.* at 1337-47. The claims were brought against a group of defendants who were alleged to have indirectly infringed a method patent that "enable[d] shipping documents to be sent directly from [a] truck driver to a common point [a process known as 'in-cab scanning'], such as a terminal, so billing and load planning [regarding the freight in the truck] can occur while the driver is en route with the freight." *Id.* at 1329. The *Bill of Lading* Court ultimately found that the complaints-at-issue did not merely contain "a formulaic recitation of a cause of action's elements," but instead sufficiently alleged that the defendants specifically intended their customers to infringe the patent-in-suit and knew that the customer's acts constituted infringement. *Id.* at 1339, 1346 (internal quotation marks and citation omitted). This was because the various complaints-at-issue (and their attachments) contained factual allegations concerning: (1) certain defendants' advertising statements relating to their products' ability (including when used in conjunction with certain software) to scan and transmit documents in a manner similar to the claimed method; and/or (2) a defendant's use of seminars targeted toward existing and potential customers to demonstrate how its products could be used in this way; and/or (3) statements from an identified customer of one defendant that the customer used the alleged indirect infringer's products to achieve goals similar to those intended to be accomplished by the use of the patented method. *Id.*

at 1341-46.[4] These allegations were deemed sufficient, even though the advertisements or statements referenced did not amount to a specific instruction to customers as to how to perform all of the steps of the patented method. *Id.*

In this case, Count Two simply alleges that Defendants have "willfully, deliberately and actively induced and/or contributed to and [are] continuing to willfully, deliberately and actively induce . . . the infringement of others of the '254 Patent by selling H94XX pastes and H92XX pastes to customers," who infringe the patent by practicing the method disclosed therein or by importing or offering to sell in the United States solar cells made by the claimed process. (D.I. 1 at ¶ 16) In addition to stating that Defendants were on notice of the patent as of the filing of the Complaint, Count Two asserts only that Defendants have "specifically intended that others will use the unauthorized products" in a manner that infringes the patent and "will continue to induce others to infringe and/or contribute to infringement" of the patent. (*Id.* at ¶¶ 17-18)

Thus, nearly all of the content of Count Two, as can be said to relate to an inducement claim, consists of a recitation of the bare legal elements of that claim, devoid of factual content to support those elements. The only facts even arguably pled in the four paragraphs that make up Count Two establish that: (1) Defendants sold certain pastes to their customers; (2) the customers practice the method disclosed in the patent by producing a light-receiving surface electrode using a conductive paste and/or import or offer to sell solar cells

---

[4]     Also important to the *Bill of Lading* Court's conclusion was that, in reviewing the patent-at-issue (an attachment to the respective complaints), one could plausibly infer that one of the most logical ways to utilize the in-cab scanning and transmission processes discussed in the complaints to increase efficiency and help load planning would be to use the method disclosed in the patent. *Bill of Lading*, 681 F.3d at 1341-42, 1346.

13

made by the patented process; and (3) Defendants received notice of the '254 patent when the

Complaint was filed. There are no factual allegations that might support the allegation that

Defendants had a specific intent to induce infringement (or otherwise knew that their customers'

acts constituted infringement)—no factual allegations, for example, about the nature of the

relationship between Defendants and their customers, nor about how the sale of Defendants'

products relates to the patented method referenced in the '254 Patent.[5]

If the Supreme Court's requirement that a plaintiff plead "factual content that allows the

court to draw [a] reasonable inference" of liability has content, *Iqbal*, 556 U.S. at 678, a plaintiff

must allege more than DuPont has here, even as to a claim for "prospective" relief.[6] Such a

---

[5] The lack of specificity as to the elements of the indirect infringement claims referenced in the Complaint is compounded by the Complaint's repeated use of the phrase "and/or." (D.I. 1 at ¶ 16 ("Heraeus has . . . actively induced and/or contributed to . . . and is continuing to . . . actively induce and/or contribute to the infringement by others")) The use of this conditional language is disfavored by our Court, as it does not give defendants (or the Court) a clear indication as to what claims are being asserted in a complaint. *See, e.g., Xpoint*, 730 F. Supp. 2d at 357 n.11 ("Plaintiff's use of language such as 'directly and/or indirectly' infringing, without further support for the indirect infringement allegations, is also disfavored by the court.") (citation omitted).

[6] Indeed, under the circumstances of this case, if Plaintiff seeks to put forward a prospective claim for inducement, the procedural posture of the litigation would seem odd as to such an allegation. An inducement claim does not arise until a defendant has knowledge of the patent-at-issue. *Global-Tech*, 131 S.Ct. at 2068. In the cases where our Court has addressed prospective indirect infringement claims, it has tended to do so in the context of the filing of an amended complaint—with the date of the defendant's alleged knowledge of the patent-at-issue alleged to have begun on the date when the initial complaint was filed. *See, e.g., Walker Digital*, 852 F. Supp. 2d at 560-61; *Apeldyn*, 852 F. Supp. 2d at 570. Here, because there has only been one Complaint filed by Plaintiff, were the indirect infringement claims to be permitted to go forward, the Plaintiff would need to have alleged facts in the Complaint as to the remaining elements of those claims (other than that relating to knowledge of the patent) regarding actions occurring on or after the date of the filing of the Complaint itself. The Court is uncertain as to whether allegations giving rise to a plausible claim could be made out in such a scenario.

requirement is also squarely in line with the Federal Circuit's holding in *Bill of Lading*. 681 F.3d

at 1339. Indeed, even in those cases where our Court has permitted prospective inducement

claims to go forward, the complaints-at-issue have tended to include at least some such factual

allegations going to defendants' specific intent to induce infringement and knowledge that their

customer's acts constituted infringement. *See, e.g.*, *Apeldyn*, 852 F. Supp. 2d at 573 (noting that

the complaint contained allegations, *inter alia*, that defendant "works directly with American

customers to develop infringing LCD televisions for sale by its customers to end consumers");

*Walker Digital*, 852 F. Supp. 2d at 563-64 (noting that the amended complaint contains "several

paragraphs alleging that [defendants] had the requisite intent to induce infringement of the '470

patent," including an allegation that defendants "instruct[ed their] users and/or customers on

using the infringing apparatuses in a manner that is accused herein to infringe").[7]  Conversely, in

cases where our Court has acknowledged that an indirect infringement claim based on post-suit

knowledge could survive a motion to dismiss, where the complaint at issue nevertheless

contained insufficient facts regarding the defendant's intent to induce infringement, the claim

was dismissed. *See, e.g.*, *Monec Holding AG v. Motorola Mobility, Inc.*, Civil Action No. 11-

798-LPS-SRF, 2012 WL 3201744, at *7 (D. Del. Aug. 3, 2012); *Chalumeau Power Systems LLC*

*v. Alcatel-Lucent*, Civil Action No. 11-1175-RGA, D.I. 50 at 2-3 (D. Del. July 18, 2012) (cited in

---

[7]     *Cf. Netgear, Inc. v. Ruckus Wireless, Inc.*, 852 F. Supp. 2d 470, 475-76 (D. Del.
2012) (holding, regarding an inducement claim that alleged pre-filing knowledge of the patent,
that plaintiff's allegations as to the requisite intent to induce infringement were sufficient to
withstand a motion to dismiss, where plaintiff alleged facts suggesting that defendant was
involved in the marketing and distribution of its products that are used by customers to infringe
and that defendant's customers employed one of defendant's employees to manage the
infrastructure and use of defendant's products).

*Monec*, 2012 WL 3201744, at *7).

Because Plaintiff does not allege sufficient facts to state a plausible claim that Defendants possessed the specific intent to encourage their customers' infringement of the patent-at-issue, or knew that their customer's acts constituted infringement, I recommend that Materials motion to dismiss be granted as it relates to allegations of induced infringement.

### b.    Contributory Infringement

Materials also argues, *inter alia*, that Plaintiff's claim for contributory infringement should be dismissed because Plaintiff does not list all of the individual elements of a contributory infringement action in Count Two, nor allege facts regarding each of those elements.   (D.I. 8 at 7; D.I. 14 at 5-6)  Under 35 U.S.C. § 271(c), a patentee must demonstrate that an alleged contributory infringer has sold, offered to sell or imported into the United States a material or apparatus for use in practicing a patented process "knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use."  *See also Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009).   Therefore, similar to inducement, Section 271(c) also requires a showing that the alleged contributory infringer knew that "'the combination for which [its] component was especially designed was both patented and infringing.'"  *Walker Digital,* 852 F. Supp. 2d at 566 (quoting *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964)).[8]

---

[8]     As with a claim for induced infringement, a claim for contributory infringement thus must also contain allegations of the requisite knowledge of the patent-in-suit at the time of infringement. *Monec*, 2012 WL 3201744, at *3 (citations omitted).  Similar to its allegation

Materials asserts that Plaintiff's complaint is deficient as to the contributory infringement claim, because the complaint "fails to set forth any details" to support an allegation that Defendants "'knew that the combination for which its components were especially made was both patented and infringing'" or that those products were "'not a staple article or commodity of commerce suitable for substantial non-infringing use.'" (D.I. 8 at 7 (quoting 35 U.S.C. § 271(c))) Plaintiff acknowledges that it would have to prove these elements to prevail on a claim of contributory infringement at trial, but argues that it should not be required to "plead each of these individual elements to state a claim for contributory infringement." (D.I. 13 at 5) Instead, it asserts that "a complaint states a claim for contributory infringement when it states that the defendant has knowledge of the patent-in-suit, and sells an infringing item to customers who infringe by using the item in accordance with the claims of the patent." (*Id.* at 6) The Court agrees with Materials.

In *Bill of Lading*, the Federal Circuit considered whether a complaint stated a plausible claim for contributory infringement. 681 F.3d at 1337. The court stated that the "district court was required to analyze the facts plead in the . . . complaints and all documents attached thereto *with reference to the elements of the cause of action for contributory infringement.*" *Id.* (emphasis added). The court then specifically analyzed whether the plaintiff had "ple[d] facts that allow an inference that the components [at issue in the case] sold or offered for sale have no

considering Plaintiff's inducement claim, Materials asserts that Plaintiff's contributory infringement claim is deficient because Plaintiff asserts that Defendants had knowledge of the '254 Patent only as of the filing of the Complaint. (D.I. 8 at 5-7) For the reasons set forth in Section II.A.2.a, the Court declines to recommend dismissal of Plaintiff's prospective claim of contributory infringement on this ground.

substantial non-infringing uses." *Id.* The court ultimately found that the complaints-at-issue did

not plead facts sufficiently stating a claim as to this issue, in that the facts put forth by the

plaintiff "contain[ed] repeated descriptions of non-infringing uses to which the accused products

[could] be put." *Id.* at 1338.

With respect to the elements of a contributory infringement claim that are at issue

here—whether defendant "knew that the combination for which its components were especially

made was both patented and infringing" and that those components have no "substantial non-

infringing use"—Plaintiff's pleadings are clearly deficient. In Count Two, not only does Plaintiff

make no factual allegations relating to these elements—it does not even reference the elements in

the Count. Indeed, other than the fact that Count Two occasionally uses the words "contribute

to" when referring to its allegations of "indirect infringement," it would be difficult to otherwise

know that Plaintiff actually intended to allege a claim of contributory infringement in that

Count.[9]

In arguing that it is not required to plead facts regarding these elements of contributory

infringement, Plaintiff cites to a number of cases from other jurisdictions that came to that

conclusion. (D.I. 13 at 5-6 (citing *Sony Corp. v. LG Elecs. U.S.A., Inc.*, 768 F. Supp. 2d 1058

---

[9]    Materials further underscores the lack of content as to the contributory
infringement claim by noting that while the Complaint's "Prayer for Relief" makes reference to
Plaintiff's direct infringement and inducement claims, it makes no specific reference to the
contributory infringement claim. (D.I. 1 at 4-5; D.I. 8 at 7) While the content of a prayer for
relief is not considered part of a claim, and is thus beyond the scope of a Rule 12(b)(6) motion,
*Schwan v. CNH Am. LLC*, No. 4:04CV3384, 2006 WL 1215395, at *35 (D. Neb. May 4, 2006),
Materials' point is well taken. It highlights that the Plaintiff's attempt to plead contributory
infringement is well hidden, as compared to the more prominent words in the Complaint that
reference other claims.

(C.D. Cal. 2011); *Minsurg Int'l, Inc. v. Frontier Devices, Inc.*, No. 8:10-CV-1589-T-33EAJ,

2011 WL 1326863 (M.D. Fla. Apr. 6, 2011); *Fotomedia Techs., LLC v. AOL, LLC*, No.

2:07CV255, 2008 WL 4135906 (E.D. Tex. Aug. 29, 2008)). The Court finds these cases to be

unpersuasive for three primary reasons.

First, all of the cases cited by Plaintiff came before the Federal Circuit's decision in *Bill

of Lading*. In those cases, when the district courts-at-issue determined that a plaintiff need not

plead facts regarding each individual element of contributory infringement, they relied for

support on their belief that their decision was in line with Federal Circuit precedent. *See

Fotomedia Techs.*, 2008 WL 4135906, at *2 (stating that "neither the patent infringement

pleading form nor the holdings from the Federal Circuit require the pleading of each individual

element of a claim for indirect infringement"); *see also Sony Corp.*, 768 F. Supp. 2d at 1063

(relying on the reasoning in *Fotomedia* and *Minsurg*); *Minsurg*, 2011 WL 1326863, at *2 (citing

*Fotomedia* for the proposition that Federal Circuit law did not require the pleading of each

element of an indirect infringement claim). However, as previously noted, the Federal Circuit

later clearly addressed this issue in *Bill of Lading*, and came to a contrary conclusion—that a

plaintiff must plead sufficient facts to give rise to a plausible claim as to each element of an

indirect infringement claim, in order to satisfy *Twombly* and *Iqbal*.

Second, the decisions of our Court, both before and after *Bill of Lading*, have required

that facts regarding all elements of contributory infringement claim be pled. *See Pragmatus

Telecom*, 2012 WL 2700495, at *1; *Netgear, Inc. v. Ruckus Wireless, Inc.*, 852 F. Supp. 2d 470,

476-77 (D. Del. 2012). And third, for the reasons discussed above regarding Plaintiff's

inducement claim, I believe that requiring Plaintiff to assert sufficient facts to make out a plausible claim as to all the elements of the contributory infringement cause of action is entirely consistent with the requirements for pleading set forth by the Supreme Court in *Twombly* and *Iqbal* (and with those set by the Third Circuit). *Cf. Arczar, Inc. v. Navico, Inc.*, No. 11-CV-805-CVE-PJC, 2012 WL 3150815, at *4 (N.D. Okla. Aug. 2, 2012) (dismissing contributory infringement claim on ground that complaint did not allege "any specific facts" as to this claim, such that complaint did not square with requirements of *Twombly* and *Iqbal*); *Tech. Licensing Corp. v. Technicolor USA, Inc.*, No. CIV. 2:03-1329 WBS EFB, 2010 WL 4070208, at *2 (E.D. Cal. Oct. 18, 2010) ("[T]he general principles of *Twombly* and *Iqbal* must be applied to indirect infringement claims.").

For all of these reasons, I recommend that Plaintiff's claim of contributory infringement be dismissed.

**c.    Willful Infringement**

Materials also originally moved to dismiss Count Two, to the extent it intended to allege willful infringement.  (D.I. 8)  Materials notes that in that Count, Plaintiff alleges that Defendants "willfully, deliberately, and actively induced and/or contributed to and [are] continuing to willfully, deliberately, and actively induce and/or contribute to . . . infringement."  (D.I. 1 at ¶ 16; D.I. 14 at 6-7)  In response, Plaintiff states this portion of Materials' motion should be denied as moot, in that it has never asserted a claim for willful infringement.  (D.I. 13 at 7)  Plaintiff explains that the Complaint's references to Defendants "willfully . . . induc[ing]" infringement were meant only to assist in pleading the required specific intent for a claim of inducement.  (D.I.

13 at 7 (citing *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293 (Fed. Cir. 2006)) In light of Plaintiff's explanation, Materials, in its reply brief, asks that the Complaint's references to willful conduct be stricken. (D.I. 14 at 7)

In light of the fact that Plaintiff has made clear that it is not now asserting a claim for willful infringement, I recommend that Materials' motion to dismiss such a claim be denied as moot. As to Materials' request to strike those portions of the complaint that make reference to Defendants' "willfully" taking certain actions, Federal Rule of Civil Procedure 12(f) states, in relevant part, that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Sepracor Inc. v. Dey, L.P.*, Civil Action No. 06-113-JJF, 2008 WL 4377570, at *2 (D. Del. Sept. 26, 2008) (internal quotation marks and citation omitted). Motions to strike are generally disfavored and "usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Id.* (internal quotation marks and citation omitted).

In light of the fact that I have recommended that Count Two's inducement and contributory infringement claims (where Plaintiff's references to willful conduct are largely found) be dismissed, I recommend that Materials' request to strike these portions of the Complaint be denied. To the extent that Plaintiff seeks to and is later granted leave to file an Amended Complaint alleging indirect infringement, it will then have the opportunity to reformulate the wording of these allegations. If Plaintiff does not file an Amended Complaint in

this regard, Materials—to the extent it can later articulate an argument as to how these references (relating to a Count dismissed from the action) would cause it prejudice—can re-raise its request to strike that content at a later time.

**B.    Rule 12(b)(2) Motion**

The Court next addresses the Rule 12(b)(2) Motion. That motion generally alleges that Holding is not subject to the personal jurisdiction of this Court. (D.I. 15)

### 1.    Standards of Review

#### a.    Standard for Jurisdictional Discovery

Federal Rule of Civil Procedure 8 does not require a plaintiff to set out in its complaint a statement explaining how a court has personal jurisdiction over a defendant. *Hansen v. Neumueller GmbH*, 163 F.R.D. 471, 474 (D. Del. 1995). However, that burden changes if the defendant challenges personal jurisdiction. If a defendant files "a motion to dismiss pursuant to Rule 12(b)(2), and supports that motion with affidavits, a plaintiff is required to controvert those affidavits with his own affidavits or other competent evidence in order to survive the motion." *Id.* at 474-75. Yet the facts that might establish personal jurisdiction may be in the exclusive control of defendants, and a plaintiff may be unable to properly respond to a Rule 12(b)(2) motion without obtaining those facts. *Id.* at 475. Thus, in some such cases, courts allow plaintiffs to take jurisdictional discovery before responding to a Rule 12(b)(2) motion. *Id.*

In considering a plaintiff's request to take jurisdictional discovery, a court should "begin[] with the presumption in favor of allowing discovery to establish personal jurisdiction." *Id.* at 474. However, a court should not permit discovery as a matter of course. Instead, before

22

allowing jurisdictional discovery to proceed, "[t]he court must be satisfied that there is some

indication that th[e] particular defendant is amenable to suit in this forum." *Id.* In this regard, in

order to obtain jurisdictional discovery, the plaintiff must "make[] factual allegations [that]

suggest the possible existence of requisite contacts between the defendant and the forum state

with reasonable particularity." *Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F.

Supp. 2d 365, 369 (D. Del. 2008) (internal quotation marks and citation omitted).[10] The Third

Circuit has summarized the general nature of this inquiry by explaining that "jurisdictional

discovery should be allowed unless the plaintiff's claim [of personal jurisdiction] is 'clearly

frivolous.'" *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir.

1997) (internal citations omitted) (hereinafter "*Andover*"); *accord Toys "R" Us, Inc. v. Step Two,

S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) ("Although the plaintiff bears the burden of demonstrating

facts that support personal jurisdiction . . . courts are to assist the plaintiff by allowing

jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'") (internal citations

---

[10]     At one point in its briefing, citing *Marnavi SPA v. Keehan*, Civ. No. 08-00389-
SLR-LPS, 2010 WL 1499583 (D. Del. Apr. 14, 2010), Plaintiff asserts that "where the defendant
has presented affidavits in support of its challenge to personal jurisdiction, a plaintiff is allowed
to test the veracity of those affidavits through jurisdictional discovery." (D.I. 19 at 7) To the
extent that Plaintiff suggests that *Holding's* submission of certain evidence militating *against* a
finding of personal jurisdiction entitles *Plaintiff* to take jurisdictional discovery in order to
determine whether that evidence is sound, this misstates the law. Nothing in *Marnvi* suggests
such a conclusion. Instead, *Marnvi*, as do the other cases cited herein, makes clear that once a
defendant has moved to dismiss on personal jurisdiction grounds (as Holding has here), it is the
*plaintiff's* burden to provide some competent evidence that defendant is subject to personal
jurisdiction, in order to warrant jurisdictional discovery. *See Marnavi SPA*, 2010 WL 1499583,
at *6; *see also LG Elecs., Inc. v. ASKO Appliances, Inc.*, Civil Action No. 08-828 (JAP), 2009
WL 1811098, at *3 (D. Del. June 23, 2009) (denying plaintiff's request for limited jurisdictional
discovery in order "to corroborate the declaration" of a third party that it had no Delaware
contacts, where plaintiff otherwise failed to identify any such contacts with reasonable
particularity).

23

omitted).

Nevertheless, if a plaintiff does not come forward with "*some* competent evidence" that personal jurisdiction over the defendant might exist, a court should not permit jurisdictional discovery to proceed. *Hansen*, 163 F.R.D. at 475 (emphasis in original); *see also Andover*, 107 F.3d at 1042 (noting that a mere "unsupported allegation" that the prerequisites for personal jurisdiction have been met would amount to a "clearly frivolous" claim, and would not warrant the grant of jurisdictional discovery) (citations omitted). This is because when the lack of personal jurisdiction is clear, further discovery serves no purpose and thus should be denied. *See Telcordia Techs., Inc. v. Alcatel S.A.*, No. Civ.A. 04-874 GMS, 2005 WL 1268061, at *9 (D. Del. May 27, 2005).

### b.    Standard for Establishing Personal Jurisdiction

To establish personal jurisdiction, the plaintiff must adduce facts sufficient to satisfy two requirements—one statutory and one constitutional. In analyzing the statutory prong, the Court must consider whether the defendant's actions fall within the scope of Delaware's long-arm statute, Del. Code Ann. tit. 10, § 3104(c). *See Power Integrations*, 547 F. Supp. 2d at 369; *Intel Corp. v. Broadcom Corp.*, 167 F. Supp. 2d 692, 700 (D. Del. 2001). In analyzing the constitutional prong, the Court must determine whether the exercise of jurisdiction comports with the defendant's right to due process. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Power Integrations,* 547 F. Supp. 2d at 370. Due process is satisfied if the Court finds that "minimum contacts" exist between the non-resident and the forum state, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."

*Id.* at 316 (internal quotation marks and citations omitted); *see also Power Integrations,* 547 F. Supp. 2d at 700.

Under the Due Process Clause of the United States Constitution, a defendant is subject to the jurisdiction of a federal court only when the defendant's conduct is such that it should "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). Unless the defendant's contacts with the forum are "continuous and systematic," such that the Court has "general" jurisdiction over the defendant, those contacts must be specifically related to the present cause of action. *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 414–16 (1984). As such, "[s]pecific personal jurisdiction exists [only] when the defendant has 'purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or related to those activities.'" *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.,* 229 F.3d 254, 259 (3d Cir. 2000) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985)).

When a defendant moves to dismiss a lawsuit for lack of personal jurisdiction, the plaintiff bears the burden of showing the basis for jurisdiction, and must make a prima facie showing that personal jurisdiction is conferred by statute. *See Power Integrations,* 547 F. Supp. 2d at 369. All factual inferences must be drawn in the light most favorable to the plaintiff at that stage. *See id.*[11]

---

[11] The law of the Third Circuit governs whether jurisdictional discovery should be permitted. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.,* 566 F.3d 1012, 1021–22 (Fed. Cir. 2009); *see also Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.,* 395 F.3d 1315, 1323 (Fed. Cir. 2005) (citing Third Circuit law for the proposition that if the plaintiff makes "factual allegations [that] suggest the possible existence of requisite contacts between the defendant and the forum state with 'reasonable particularity,'" then a Delaware federal court

25

## 2.    Discussion

In support of its Rule 12(b)(2) Motion, Holding argues that it is a non-resident holding company, lacking any Delaware contacts that might support the exercise of personal jurisdiction over it. (D.I. 15 at 1)  In support of this motion, Holding submitted the Declaration of Markus Binder, a Legal Counsel in Holding's Commercial Law Department. (*Id.*, ex. A) ("the Binder Declaration").  Among other things, the Binder Declaration states that Holding: (1) has no employees, facilities, offices, real estate, or bank accounts in Delaware; (2) does not directly export any products to Delaware or elsewhere in the United States, nor solicit business in the state; (3) is not controlled by persons located in Delaware, nor does it have registered agents in the state; and (4) has no contracts with entities located in Delaware. (*Id*. at 2-3)

For its part, Plaintiff does not argue that it has, at this stage, discharged its burden of proving personal jurisdiction over Holding. (D.I. 19 at 7)  Instead, it argues that it has asserted sufficient facts to warrant the order of jurisdictional discovery on this question. (*Id.*)  In asserting that jurisdictional discovery is warranted, Plaintiff claims that the Court can exercise personal jurisdiction over Holding under what is known as the "agency theory."[12] (*Id*. at 4-7)  Delaware's

should order jurisdictional discovery). In contrast, Federal Circuit law controls the underlying issue of personal jurisdiction in patent infringement cases (although this inquiry naturally depends on the application of state law construing the forum state's applicable long-arm statute). *Autogenomics, Inc.*, 566 F.3d at 1016.

[12]    Delaware law provides two theories that allow a court to exercise jurisdiction over a parent corporation based on its jurisdiction over a subsidiary: the alter ego theory and the agency theory. *Telcordia Techs.*, 2005 WL 1268061, at *2 n.2 (citing *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1463 (D. Del. 1991)). Under the "alter ego" theory, the party asserting jurisdiction must demonstrate fraud or inequity in the use of the corporate form for a court to "pierce the corporate veil" or attribute the actions of a subsidiary to the parent. *Id.* Here, Plaintiff has only asserted a jurisdictional argument based on the agency theory, not the alter ego theory. Therefore, the Court will not address the latter theory.

26

long-arm statute authorizes jurisdiction over a non-resident when that party or its agent engages in one of a number of an enumerated set of activities. In this case, Plaintiff appears to advance a jurisdictional theory based upon the Delaware-based contacts of Holding's alleged agent—its wholly owned subsidiary, Materials.

> **a.** **Evidence Regarding Holding's Alleged Control Over Materials**

A Delaware court may exercise jurisdiction over a parent based upon the contacts that a subsidiary has with this forum "where the subsidiary acts on the parent's behalf or at the parent's direction." *C.R. Bard, Inc. v. Guidant Corp.*, 997 F. Supp. 556, 560 (D. Del. 1998). The central factual issue, in determining whether a subsidiary corporation is an agent of the parent corporation, is one of control: whether the parent corporation dominates the activities of the subsidiary. *Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil, Inc.*, 456 F. Supp. 831, 841 (D. Del. 1978). However, "only the precise conduct shown to be instigated by the parent is attributed to the parent." *C.R. Bard*, 997 F. Supp. at 560 (internal quotation marks and citation omitted). Among the factors that our Court has traditionally used to determine whether an agency relationship exists between a parent and its subsidiary are: "[1] the extent of overlap of officers and directors, [2] methods of financing, [3] the division of responsibility for day-to-day management, and [4] the process by which each corporation obtains its business." *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1463 (D. Del. 1991). Our Court has at times also examined additional factors in considering this question, including stock ownership and whether the parent holds out to the public that a subsidiary is a department of its own business. *See, e.g.*, *Japan Petroleum*, 456 F. Supp. at 841 (examining these factors in

27

considering whether a subsidiary was the agent of a parent corporation regarding a motion to dismiss filed under Rule 19(b)). "No one of these factors is either necessary or determinative; rather it is the specific combination of elements that is significant." *Applied Biosystems*, 772 F. Supp. at 1463; *see also Japan Petroleum*, 456 F. Supp. at 841.

With regard to the overlap of officers and directors, Holding presents uncontroverted evidence that no such overlap exists between it and Materials. Specifically, the Binder Declaration asserts that Holding has its "own board of directors separate from [Materials], holding separate directors' meetings," and that there is "no overlap in employees or corporate officers with [Materials]." (D.I. 16, ex. A at ¶¶ 8-10) Thus, this factor weighs against the finding of an agency relationship.

Plaintiff does provide some evidence suggesting that Holding finances Materials' operations. It submits Holding's 2010 Annual Report, which appears to state that Holding invested €36.8 million in 2010 for capital expenditures in "the precious metals business group and the materials and technologies business group" with an "emphasis on building up and expanding production capacities for [among other things] photovoltaics." (*Id.*, ex. 3 at 35; *see also id.* at 7 (noting that Holding considers photovoltaics one of its "key" customer industries)) Plaintiff also points to Holding's promotion of ownership of "more than 6,000 patents[,] and [o]ver 350 R&D employees in 25 development centers around the world." (D.I. 19, ex. 7) Plaintiff claims these facts "indicate[] that [Holding] may finance . . . the development of new technologies at [Materials]." (D.I. 19 at 6) Although it is less clear how Holding's patent portfolio impacts Materials' financial growth, taken together, these facts—particularly the

28

information regarding the nature of Holding's investment in Materials' photovoltaics business—amount to some competent evidence suggesting that Holding finances the development of new technologies at Materials.

As to the division of responsibility for Materials' day-to-day management, the evidence is conflicting. On the one hand, Defendant offers the Binder Declaration, which avers that Holding "does not control the daily operations or management of [Materials], which is independently managed and run by its own board and executive officers." (D.I. 16, ex. A at ¶ 10) On the other hand, Plaintiff points to Holding's Corporate Guiding Principles, which purport to set the "long-term goals" of Heraeus Group (including Materials), to "specify how [Holding] lead[s] and structure[s]" the Group, and otherwise sets forth the core values that direct how members of Heraeus Group should conduct their daily business. (D.I. 19, ex. 4) These principles "apply to all employees, managers, and corporate bodies," presumably including Materials and its employees. (*Id.*) Holding also appears to have a role in Materials' recruitment efforts, as Holding's website contains advertisements for those seeking jobs with Materials. (*Id.*, ex. 5) Additionally, Plaintiff has submitted evidence suggesting that Holding oversees the preparation of Materials' financial statements and management reports. (*Id.*, ex. 3 at 12) At this stage, Holding's exact role in Materials' day-to-day management is far from clear. But Materials has put forward some competent evidence suggesting that Holding maintains a level of oversight and control of Materials' operation.

Neither party has put forward any evidence suggesting how Holding or Materials obtains business. Thus, this factor does not weigh in favor of a finding of agency.

As to any additional factors raised by the parties regarding agency, Plaintiff has submitted evidence showing that Holding owns 100 percent of the stock of Materials. (D.I. 19, ex. 2) Additionally, Plaintiff has also submitted some materials from Holding's website indicating that Holding holds out Materials to be operating as a department of Holding's business. These include a reference to Materials as one of Holding's "seven business groups," as well as web entries showing that Holding advertises and details the innovations of Materials, including Materials' "Solar Cell Pastes," as "Heraeus products." (D.I. 19, ex. 6 at 2-3) To a great degree, these documents underscore what the Complaint alleges—that Materials is a wholly owned subsidiary of Holding that makes solar cell-related pastes.

Holding urges that Plaintiff's "'facts' do not support discovery into agency because they do not support a finding of agency, itself" and argues that these facts amount to "far less involvement than what the Court" has found to amount to an agency relationship. (D.I. 20 at 4) It is true that Plaintiff's proffered evidence as to the level of control Holding has over Materials is not overwhelming. However, the present issue before the court is not whether Plaintiff has adduced enough such evidence to establish an agency relationship, sufficient to withstand a motion to dismiss.[13] The question is whether Plaintiff has put forward *some competent evidence* to support its contention that Holding exercises sufficient control over Materials for purposes of

---

[13]      Indeed, some of the cases cited by Holding in support of its position are not cases where a court was considering whether to grant jurisdictional discovery, but instead cases in which the court made the ultimate determination as to whether an agency relationship had been established by a plaintiff. Indeed, in one such case cited by Plaintiff, *Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil, Inc.*, 456 F. Supp. 831 (D. Del. 1978) (cited in D.I. 20), although this Court ultimately found that the plaintiff had not established that a subsidiary corporation was an agent of its parent corporation, the Court had already permitted the plaintiff the ability to conduct jurisdictional discovery on the question. *Japan Petroleum*, 456 F. Supp. at 837.

the agency analysis, sufficient to allow jurisdictional discovery. And here, Plaintiff *has* offered

some competent evidence that: (1) Holding appears to finance certain of Materials' activities,

including activities related to the allegations in the Complaint; (2) Holding has some level of

responsibility and influence over Materials' day-to-day activities; and (3) Holding owns 100

percent of the stock of Materials and holds Materials out as a mere department of its overall

operation. Based on this evidence, I cannot say that it is "clearly frivolous" to contend that

Holding exercises sufficient control over Materials, such that Materials could be considered its

agent for purposes of the personal jurisdiction inquiry.

Holding cites a number of cases, including *Telcordia Techs., Inc. v. Alcatel S.A.*, No.

Civ.A. 04-874 GMS, 2005 WL 1268061 (D. Del. May 27, 2005), in support of its argument.

These cases, however, do not require a contrary conclusion. In *Telcordia*, this Court found that it

would be inappropriate to allow jurisdictional discovery regarding plaintiff Telecordia's

allegation that defendant Alcatel USA was the agent of its French parent corporation, defendant

Alcatel S.A. *Id.* at *1, *8-9. Telecordia had alleged, in support of its claim of agency, that:

> (1) Alcatel S.A. makes it abundantly clear that the United States market
> is very important to it and raises funds in the United States; (2) it owns
> patents, *i.e.* property, in the United States; (3) it fails to distinguish
> among its multinational subsidiaries-that is, it consolidates descriptions
> of its activities with those of its subsidiaries; (4) it chose to incorporate
> Alcatel USA in Delaware; (5) its Senior Vice President . . . is the CEO
> of Alcatel USA; and (6) its website solicits requests for information
> concerning its products, including allegedly infringing products from
> Delaware residents.

*Id.* at *3. The *Telecordia* Court found that not only were these allegations insufficient to

demonstrate that an agency relationship existed between the two corporations, but also that

31

jurisdictional discovery on the question should not be permitted. *Id.* at *4, *9.

Of the cases cited by Holding in support of its argument that no jurisdictional discovery here is warranted, *Telecordia* is the strongest.[14]  Indeed, in *Telecordia*, one officer of the parent corporation was also an officer of the subsidiary corporation, *id.* at *3, whereas in this case, there is no such overlap of officers.  However, in this case, as was discussed above, Plaintiff has put forward evidence regarding Holding's financing of Materials' activities and its alleged control over Materials' day-to-day activities—evidence of a kind not offered in *Telecordia*.  Moreover, while in *Telecordia* the website of the parent and subsidiary clearly distinguished the parent from the subsidiary's U.S.-based activity, *id.* at *7, here the excerpts provided from Holding's website (an important part of the evidence Holding has presented) are far less clear in making that distinction.  For these reasons, I do not think that *Telecordia* compels the conclusion that there has been an insufficient showing of Holding's control over Materials.[15]

---

[14]     Other cases prominently cited by Holding are more easily distinguishable. *See, e.g., LG Elecs.*, 2009 WL 1811098, at *2-3 (D. Del. June 23, 2009) (denying jurisdictional discovery where plaintiff did "not dispute" that parent company did not participate in subsidiary's day-to-day decision making and where any alleged relationships between the parent and its subsidiaries amounted to "speculations," such that an agency theory was not viable); *Liverperson, Inc. v. Nextcard, LLC*, C.A. No. 08-062-GMS, 2009 WL 742617, at *5 (D. Del. Mar. 20, 2009) (denying jurisdictional discovery where plaintiff did not "provide[] any evidence" as to all but one of the four primary factors relating to whether an agency relationship existed between the parent and subsidiary, and as to the remaining factor—regarding the management of the subsidiary's day-to-day activities—the evidence-at-issue amounted to a "bald and speculative assertion").

[15]     With regard to an examination of agency, the Court is also mindful that it must avoid the notion that a "parent company can be held liable for the obligations of a subsidiary [under an agency theory] purely on the basis of dominion and control" and that there must also be a "close connection between the relationship of the two corporations and the cause of action." *C.R. Bard*, 997 F. Supp. at 560; *see also Quantum Loyalty Sys., Inc. v. TPG Rewards, Inc.*, Civil Action No. 09-22-SLR/MPT, 2009 WL 5184350, at *7 (D. Del. Dec. 23, 2009) (noting that Section 3104(c) requires a connection between the agency relationship and the jurisdictional acts

## b. Evidence Regarding the Additional Requirements of Delaware's Long-arm Statute

Simply offering competent evidence of an agency relationship is not sufficient to confer jurisdiction over a non-resident parent corporation of a Delaware subsidiary. *Applied Biosystems*, 772 F. Supp. at 1464. "Rather, a finding of agency is simply that [a court] may attribute certain of the [subsidiary's] acts to [the parent] in assessing whether the requirements of the Delaware long-arm statute have been satisfied." *Id.* At this stage, then, the Plaintiff must also put forward some competent evidence indicating that the requirements of at least one provision of Delaware's long-arm statute warrant the exercise of jurisdiction over Holding. The failure to do so is grounds to deny jurisdictional discovery. *See LG Elecs., Inc. v. ASKO Appliances, Inc.*, Civil Action No. 08-828 (JAP), 2009 WL 1811098, at *3 (D. Del. June 23, 2009) (denying jurisdictional discovery where plaintiff had failed to identify with any reasonable particularity the possible existence of sufficient contacts to Delaware); *Parker v. Learn Skills Corp.*, 530 F. Supp. 2d 661, 673–74 & n.6 (D. Del. 2008) (declining to permit jurisdictional discovery regarding general jurisdiction claim pursuant to Section 3104(c)(4) where the plaintiff's allegations as to the nature of Delaware contacts did not go beyond "labels and

---

done by the agent). In this case, the patent infringement allegation in the Complaint relates to the Defendants' alleged manufacture and use of solar cells made using photovoltaic pastes in the H94XX and H92XX series. (D.I. 1 at ¶ 12) Among the factual allegations that Plaintiff has put forward regarding Materials' alleged agency relationship with Holding is Holding's investment of significant capital expenditures in Materials' photovoltaic business unit, and the asserted importance of this business to Holding. (D.I. 19 at 6) These investments presumably relate to work being conducted in Materials' facilities, including the West Conshohocken, Pennsylvania research facility where Materials is alleged to conduct infringing activity relating to the manufacture and use of the solar cells referenced above. (D.I. 1 at ¶ 12). As a result, the evidence presented regarding agency does include evidence that appears connected to the cause of action in this case.

conclusions").

Despite this requirement, Plaintiff does not indicate—either in the Complaint or in its

briefing—what portion of the Delaware long-arm statute it relies upon for purposes of asserting

personal jurisdiction. Indeed, Plaintiff does not specifically cite to or reference the statute at all.

In the Complaint, as to personal jurisdiction, Plaintiff asserts that:

> [Materials] is incorporated in Delaware and maintains substantial,
> continuous, and systematic contacts in Delaware. Heraeus has thus
> purposefully availed itself of the benefits and protections of Delaware's
> laws such that it should reasonably anticipate being haled into court here.
> [Holding] is subject to personal jurisdiction in Delaware because, (a) on
> information and belief, [Holding] controls and dominates [Materials], and
> therefore the activities of [Materials] in this jurisdiction are attributed to
> [Holding] and (b) defendant [Holding] develops, markets, and distributes
> front-side silver pastes throughout the United States and in this judicial
> district through the actions of its agent [Materials].

(D.I. 1 at ¶ 7) The Court will examine whether these allegations, or others in the Complaint,

amount to some competent evidence that Holding, through the acts of Materials, maintains

sufficient contacts in Delaware to satisfy subsections (c)(1)-(4) of the long-arm statute—the only

subsections that might plausibly be implicated by these allegations.

### (1)     Specific Jurisdiction

Subsections (c)(1)-(3) of the Delaware long-arm statute require a showing of specific

jurisdiction. *Registered Agents, Ltd. v. Registered Agents, Inc.*, Civ. No. 11-775-SLR, 2012 WL

3100404, at *3 (D. Del. July 31, 2012). Specific jurisdiction "require[s] a 'nexus' between the

plaintiff's cause of action and the conduct of the defendant that is used as a basis for

jurisdiction." *Telcordia*, 2005 WL 1268061, at *2; *see In re Cyclobenzaprine Hydrochloride*

*Extended-Release Capsule Patent Litig.*, 693 F. Supp. 2d 409, 420 (D. Del. 2010) (requiring that

34

the subsidiary's contacts relate to the patent infringement action for jurisdiction under subsection

(c)(1)). The relevant provisions of the long-arm statute provide that a court may exercise

personal jurisdiction over any nonresident who through an agent:

> (1) Transacts any business or performs any character of work or service in the State;
> (2) Contracts to supply services or things in this State;
> (3) Causes tortious injury in the State by an act or omission in this State;

Del. Code Ann. tit. 10, § 3104(c). To be entitled to jurisdictional discovery, Plaintiff must allege

some competent evidence to show that Holding, through Materials, has performed some act in

Delaware falling within the above provisions and that the surviving direct infringement cause of

action arose from that Delaware contact. *See Applied Biosystems*, 772 F. Supp. at 1466.

Plaintiff's allegation that Materials is incorporated in Delaware is not sufficient to confer

jurisdiction over Holding in this action. First of all, the act of incorporation is not related to

Plaintiff's patent infringement claim. *See Quantum Loyalty Sys., Inc. v. TPG Rewards, Inc.*,

Civil Action No. 09-22-SLR/MPT, 2009 WL 5184350, at *5 (D. Del. Dec. 23, 2009); *Applied*

*Biosystems*, 772 F. Supp. at 1466. Thus, Plaintiff's claim of patent infringement did not arise out

of Materials' incorporation in Delaware, as required under the specific jurisdiction provisions of

the statute. Second, "the mere fact that a non-Delaware corporation owns a Delaware subsidiary

is not sufficient in itself to justify Delaware's exercise of personal jurisdiction over the non-

Delaware parent." *Ace & Co., Inc. v. Balfour Beatty PLC*, 148 F. Supp. 2d 418, 422-23 (D. Del.

2001) (citation omitted). For these two reasons, Materials' incorporation in Delaware does not

bolster the claim that there is personal jurisdiction over Holding in this action.

35

Plaintiff's allegation that "[Holding] develops, markets, and distributes front-side silver pastes throughout the United States and in this judicial district through the actions of its agent [Materials]," (D.I. 1 at ¶ 7), is insufficient to justify jurisdictional discovery because it does not relate to any surviving claims in this action.[16] As described above, this Court recommends dismissal of Plaintiff's claims of indirect infringement. Thus, the only surviving claim at this stage is one for direct infringement of the '254 Patent. Direct infringement of method claims, such as those in the '254 Patent, occurs only when the claimed method *itself* is made, used, sold, or offered for sale. A method claim is not infringed when a component used to practice the claimed method is sold. *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993) ("The law is unequivocal that the sale of equipment to perform a process is not a sale of the process within the meaning of section 271(a)."). Accordingly, developing, marketing, and selling the silver pastes at issue does not go to the alleged direct infringement of the method claims of the '254 Patent. Therefore, Plaintiff does not allege any facts tying Materials' Delaware contacts to the claims in this action.

### (2)   General Jurisdiction

---

[16]     The Court would also find that this amounts to an allegation unsupported by specific facts that cannot support the exercise of personal jurisdiction. *See, e.g., Telcordia*, 2005 WL 1268061, at *9 ("a mere unsupported allegation that [a] defendant 'transacts business' in an area is 'clearly frivolous'"); *see also Andover*, 107 F.3d at 1042 (same); *Quantum Loyalty*, 2009 WL 5184350, at *5 (same). The allegation contains no nod to any specific facts regarding the alleged development, marketing or distribution of front-side silver pastes in Delaware. *Cf. Belden Techs., Inc. v. LS Corp.*, 626 F. Supp. 2d 448, 458 (D. Del. 2009) (granting jurisdictional discovery under a dual jurisdiction theory where the plaintiff "identifie[d] defendants' business relationship with *specific* entities and allege[d] contacts with Delaware through these relationships") (emphasis added).

Subsection (c)(4) of Delaware's long-arm statute provides for general jurisdiction. *See*

*Reach & Assocs., P.C. v. Dencer*, 269 F. Supp. 2d 497, 505 (D. Del. 2003). Unlike the specific

jurisdiction provisions, this provision allows jurisdiction over a nonresident if the nonresident or

its agent causes tortious injury by an act *outside* the State. Del. Code Ann. tit. 10, § 3104(c)(4).

However, this provision requires that the nonresident or its agent be "generally present" in

Delaware. *Reach & Assocs.*, 269 F. Supp. 2d at 505. A general presence requires that the

defendant or its agent "regularly does or solicits business, engages in any other persistent course

of conduct in the State, or derives substantial revenue from services, or things used or consumed

in the State." Del. Code Ann. tit. 10, § 3104(c)(4). "While seemingly broad, the standard for

general jurisdiction is high in practice and not often met." *Reach & Assocs.*, 269 F. Supp. 2d at

505.

At the outset, this court finds that Plaintiff has presented some competent evidence of a

tortious act outside of Delaware. Specifically, Plaintiff has presented some competent evidence

that Materials' engages in direct infringement of the '254 Patent, through its manufacture and use

of solar cells made using pastes in the H94XX and H92XX series at its West Conshohocken,

Pennsylvania facility. (D.I. 1 at ¶¶ 4, 10, 12)

As for the general presence requirement, Plaintiff appears to proceed upon the theory that

Materials is Holding's general agent in Delaware and that Materials has a "general presence" in

Delaware. *See Reach & Assocs.*, 269 F. Supp. 2d at 505 (noting that under Section 3104(c) the

"defendant or its agent must still be 'generally present' in the state"). "General presence" is not

met simply because a subsidiary is incorporated in the state. *Monsanto Co. v. Syngenta Seeds*

*Inc.*, 443 F. Supp. 2d 636, 646-47 (D. Del. 2006) (refusing to impute to a parent the incorporation

of its subsidiaries in Delaware in an analysis of Section 3104(c)(4)). Rather, "general presence"

requires that the agent meet the requirements of Section 3104(c)(4) of the long-arm statute: that

it "regularly does or solicits business, engages in any other persistent course of conduct in the

State, or derives substantial revenue from services, or things consumed in the State." *Reach &*

*Assocs.*, 269 F. Supp. 2d at 505.

On that score, the Court will disregard Plaintiff's allegation that Materials "maintains

substantial, continuous, and systematic contacts in Delaware," (D.I. 1 at ¶ 7), as a mere "label

and conclusion." *Parker*, 530 F. Supp. 2d at 673–74 (declining to permit jurisdictional discovery

regarding general jurisdiction claim pursuant to § 3104(c)(4) where the plaintiff's allegations as

to the nature of Delaware contacts did not go beyond "labels and conclusions"). Plaintiff's only

other allegation touching on this requirement is that Materials develops, markets, and sells pastes

in the United States and Delaware. (D.I. 1 at ¶ 7) I conclude that this allegation is not sufficient

to meet Plaintiff's burden of producing some competent evidence that Materials regularly does or

solicits business in Delaware.

Under Section 3104(c)(4) the mere sale of products in Delaware is insufficient to confer

jurisdiction. *See Merck & Co., Inc. v. Barr Labs., Inc.*, 179 F. Supp. 2d 368, 370-73 (D. Del.

2002) (declining to find general jurisdiction sufficiently alleged under Section 3104(c)(4), where

the defendant had a license to sell products in Delaware and sold products to four different

customers). Rather, what is required is that business is *regularly* performed or solicited in

Delaware. Yet even after the jurisdictional challenge by Holding, Plaintiff has put forward no

specific facts regarding Materials' alleged Delaware business activity, let alone the alleged regularity of that activity—leaving the court only to speculate as to whether such a showing could plausibly be made. For example, Plaintiff puts forward no specific facts as to Materials' alleged development, marketing, or sale of pastes in Delaware. Moreover, Plaintiff does not allege, for instance, that Materials has a place of business, employees, bank accounts, or real estate in Delaware. *See id.* at 373. In light of this, I cannot say that Plaintiff has made "factual allegations [that] suggest the possible existence of requisite contacts . . . with reasonable particularity." *Power Integrations*, 547 F. Supp. 2d at 369 (internal quotation marks and citation omitted). Therefore, I conclude that Plaintiff's allegation is insufficient to justify jurisdictional discovery.[17] *Compare Parker*, 530 F. Supp. 2d at 673-74 (declining to permit jurisdictional discovery pursuant to Section 3104(c)(4), *inter alia*, when allegation that defendants derive substantial revenue from products sold in Delaware was made in a "conclusory manner"), *with Belden Techs., Inc. v. LS Corp.*, 626 F. Supp. 2d 448, 458-59 (D. Del. 2009) (granting jurisdictional discovery under a dual jurisdiction approach where Plaintiff "alleged sufficient facts and *supported* these allegations with competent evidence in the form of a signed declaration containing exhibits," which "identifie[d] defendants' business relationship with *specific* entities and allege[d] contacts with Delaware through these relationships") (emphasis added).[18]

---

[17]     Plaintiff makes no specific allegation that Materials engages in "any other persistent course of conduct in the State," or that it "derives substantial revenue from services, or things used or consumed in the State." Thus, those remaining prongs of Section 3104(c)(4) have no applicability here.

[18]     *Cf. Regan v. Loewenstein*, 292 F. App'x 200, 205 (3d Cir. 2008) (affirming the denial of jurisdictional discovery due to the fact that the defendants' physical presence in the state was not "continuous and systematic contact," where the alleged presence amounted to appearing for occasional concerts in the state).

Although, the bar for justifying jurisdictional discovery is a low one, I do not believe that Plaintiff's allegations as to Materials' (and therefore, Holding's) requisite contacts under the Delaware long-arm statute go beyond the speculative realm.[19]  Considering the scant evidence before the Court on that score, I recommend that jurisdictional discovery be denied.

### c.   Conclusion

To establish personal jurisdiction, a plaintiff must produce facts sufficient to satisfy both the statutory and constitutional prongs of that inquiry by a preponderance of the evidence. *Registered Agents*, 2012 WL 3100404, at *3.  Because I find, for the reasons set forth above, that Plaintiff has not adduced facts sufficient to justify jurisdictional discovery, Plaintiff has also necessarily failed to meet the more demanding burden of showing that Holding is actually subject to this Court's personal jurisdiction.  Thus, I recommend that Holding's Rule 12(b)(2) Motion be granted.

## III.   CONCLUSION

For the foregoing reasons, I recommend that the Court GRANT-IN-PART and DENY-IN-PART Materials' Rule 12(b)(6) Motion.  Specifically, I recommend that Materials' motion as to Plaintiff's inducement and contributory infringement claims be granted without prejudice, that its motion as to willful infringement be denied as moot, and that the Court decline to strike any

---

[19]     Because the Court concludes that Plaintiff has failed to advance some competent evidence regarding the statutory prong of the jurisdictional analysis, it need not reach the constitutional prong. *See Belden Techs.*, 626 F. Supp. 2d at 457.  However, "because the Delaware long-arm statute confers the identical scope of jurisdiction as does the Due Process Clause," the evidentiary showing made by Plaintiff would also be insufficient with regard to a due process analysis as well. *Id.*; *see also Registered Agents*, 2012 WL 3100404, at *3.

portion of the Complaint at this time. I also recommend that the Court GRANT Holding's Rule 12(b)(2) Motion.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order In Non-Pro Se Matters For Objections Filed Under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is available at http://www.ded.uscourts.gov/court-info/local-rules-and-orders/general-orders.

Dated: September 28, 2012

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE